UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CAPRICE MARKETING LLC, a Delaware limited liability company;<br><br>NUVUE PARTNERS LLC, a Delaware limited liability company;<br><br>CAPITAL ADVANCE LLC, a Delaware limited liability company;<br><br>LOAN ASSISTANCE COMPANY LLC, a Delaware limited liability company;<br><br>ILIFE FUNDING, LLC, f/k/a Guaranteed Funding Partners LLC, a Delaware limited liability company;<br><br>SEAN C. MULROONEY, individually, and as an officer or shareholder of the corporate defendants; and<br><br>ODAFE STEPHEN OGAGA, individually, and as an officer or shareholder of the corporate defendants,<br><br>Defendants. | 1:13-cv-06072<br>Judge John Z. Lee<br>Magistrate Judge Geraldine Soat Brown<br><br>[FILED UNDER SEAL]<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |



FILED

AUG 27 2013

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2),(c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.  The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.  The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6.  Defendant **Caprice Marketing LLC** ("Caprice") is a Delaware limited liability company with its principal place of business in Clearwater, Florida. Caprice transacts or has transacted business in this district and throughout the United States.

7.  Defendant **NuVue Partners LLC** ("NuVue") is a Delaware limited liability company with its principal place of business at 2637 Atlantic Boulevard #20114, Pompano Beach, Florida. NuVue transacts or has transacted business in this district and throughout the United States.

8. Defendant **Capital Advance LLC** ("Capital Advance") is a Delaware limited liability company with its principal place of business at 2637 Atlantic Boulevard #20114, Pompano Beach, Florida. Capital Advance transacts or has transacted business in this district and throughout the United States.

9. Defendant **Loan Assistance Company LLC** ("Loan Assistance") is a Delaware limited liability company with its principal place of business in Clearwater, Florida. Loan Assistance transacts or has transacted business in this district and throughout the United States.

10. Defendant **ILife Funding, LLC** ("ILife"), formerly known as Guaranteed Funding Partners LLC ("Guaranteed Funding"), is a Delaware limited liability company with its principal places of business in New Castle, Delaware and Clearwater, Florida. ILife transacts or has transacted business in this district and throughout the United States.

11. Defendant **Sean C. Mulrooney** is an officer, director, member, or shareholder of Caprice, NuVue, Capital Advance, Loan Assistance, Guaranteed Funding, and ILife ("Corporate Defendants"). At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint. Defendant Mulrooney, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

12. Defendant **Odafe Stephen Ogaga** is an officer, director, member, or shareholder of the Corporate Defendants. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated

3

in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint. Defendant Ogaga, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13. The Corporate Defendants have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and office locations, and that commingled funds. Defendants also have used the following business names in operating the common enterprise: Vantage Funding, Ideal Advance, Capital Advance Capitol, Palm Loan Advances, Loan Tree Advances, Your Loan Funding, Pacific Advances, and Mulrooney-London, Inc. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Sean C. Mulrooney and Odafe Stephen Ogaga have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

14. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

15. Since at least April 2012, Defendants have operated numerous websites that purport to help consumers obtain payday loans, representing that the loan funds will be

4

electronically deposited into consumers' bank accounts in as little as one hour. Defendants' websites include:

- Vantage Funding (vantagefundingapp.com)
- Ideal Advance (idealadvance.com)
- Loan Assistance Company (loanassistanceco.com)
- Palm Loan Advances (palmloanadvances.com)
- Loan Tree Advances (loantreeadvances.com)
- Pacific Advances (pacificadvances.com)
- Your Loan Funding (yourloanfunding.com)

16. Defendants' websites represent that applicants have a very good chance of being approved for a loan. These websites promise that "4 out of every 5 applicants is [sic] approved on the spot" for a payday loan without a credit check, and claim that consumers can obtain "up to $1,000 in as fast as 1 hour!"

17. Consumers who attempt to obtain a payday loan through one of Defendants' websites are required to provide extensive personal and financial information, including their social security numbers and bank account information. It is common for online lenders to request such information to process loan applications and to effectuate the transfer of funds into consumers' bank accounts if applications are approved.

18. Contrary to Defendants' representations, the personal and financial information submitted by consumers is not used to match consumers with payday lenders, and consumers do not receive payday loans as a result of their applications to Defendants. Instead, Defendants use consumers' personal and financial information to withdraw $30 or more from consumers' bank

5

accounts without authorization. Defendants utilize "demand drafts," also called "remotely-created checks," to make these unauthorized debits to consumers' accounts.

19. Consumers do not authorize and are not expecting these withdrawals. As a result, Defendants' withdrawals often cause consumers' accounts to be overdrawn. In many instances, this causes consumers to incur overdraft fees.

20. Once consumers have discovered Defendants' unauthorized withdrawals, many obtain copies of the demand drafts from their banks. The demand drafts have the appearance of conventional checks, except that they are not drafted, signed, or authorized by the consumers from whose accounts they are drawn. Notwithstanding the lack of authorization, the signature lines on the drafts indicate that the drafts purportedly have been authorized by the consumers, stating: "NO SIGNATURE REQUIRED. This payment has been authorized by your depositor." The consumers' name is typed below this statement.

21. The demand drafts are made payable to Defendants or to a business name used by Defendants. Regardless of the payee, the memo line on the drafts usually includes a phone number and/or email address controlled by Defendants.

22. Many consumers call the phone numbers listed on the demand drafts. Often times, no one answers the phone, and consumers are unable to speak to anyone about the withdrawals. If a representative answers, consumers are subjected to a variety of misrepresentations when seeking an explanation for the unauthorized withdrawals and a refund of their money.

23. Defendants' representatives typically first tell consumers that the charge is a "processing fee" associated with a payday loan application. When consumers indicate that they

6

did not agree to pay a processing fee, Defendants' representatives typically insist that the withdrawals were authorized and therefore no refund is available.

24. Consumers who continue to complain to Defendants about the unauthorized withdrawals are often encouraged to accept a $100 gas voucher instead of a refund. Those who agree to accept the gas voucher in lieu of a refund never actually receive the promised gas voucher.

25. In some instances, Defendants' representatives may ultimately agree to provide a refund. Most consumers who are promised a refund, however, never actually receive one. These consumers often then repeatedly call Defendants in vain when no refund materializes. Eventually, these consumers simply give up, exhausted by the process of attempting to obtain a refund from Defendants.

26. Defendants sometimes make more than one unauthorized withdrawal from a given consumer's bank account. In many cases, consumers are forced to close their bank accounts in order to stop these unauthorized withdrawals.

27. At the bottom of Defendants' main website pages, well below the large-font representations about how easy it is to obtain a payday loan, some of Defendants' websites include a "Terms & Conditions" hyperlink rendered in small print. A consumer does not have to click on this hyperlink to complete the application process. If, however, a consumer clicks on the "Terms & Conditions" hyperlink, that consumer is directed to another page of Defendants' websites. Buried in the pages of text that consumers reach after clicking on the hyperlink is the statement that consumers will be charged a one-time fee of $30 to enroll in an "optional" funding assistance program. Moreover, consumers typically do not see this information buried in the

terms and conditions pages of Defendants' websites.

28. Some consumers encountered pop-up windows during the application process on Defendants' websites. The pop-up windows make some mention of a fee, but only appear after consumers already have provided extensive personal and financial information to Defendants. Subsequently, however, Defendants debit those consumers' bank accounts a $30 fee regardless of whether or not the consumers discontinue the application process in a reasonable effort to avoid the fee.

29. In addition to charging consumers who provided their personal and financial information on Defendants' websites, Defendants also have obtained extensive personal and financial consumer information, including bank account numbers, from third-party sources. Consumers whose information Defendants have obtained from third parties have not applied for payday loans through Defendants' websites or otherwise conducted business with Defendants. Nonetheless, Defendants also make unauthorized $30 debits to the accounts of these consumers.

30. Regardless of how they obtain the personal information that they use to make their unauthorized debits, Defendants do not provide any service or product whatsoever to consumers in exchange for the funds they withdraw. Defendants do not make payday loans to consumers, nor do consumers receive payday loans from other lenders as a result of their applications with Defendants.

## VIOLATIONS OF THE FTC ACT

31. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

32. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

33. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### Unfair Billing Practices

34. In numerous instances, Defendants have obtained consumers' bank account information and have made withdrawals from consumers' bank accounts without consumers' express informed consent.

35. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

36. Therefore, Defendants' practices as described in Paragraph 34 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## COUNT II

### Misrepresentation of Material Facts

37. In numerous instances, in connection with the advertising, marketing and promotion of payday loans, Defendants have represented, directly or indirectly, expressly or by implication, that:

  a. They will help consumers obtain a payday loan;

  b. They will use the personal and financial information that consumers provide on Defendants' websites to help consumers obtain a payday loan; and

  c. Four out of five applicants on Defendants' websites are approved for a payday loan.

38. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 37 above:

  a. Defendants do not help consumers obtain a payday loan;

  b. Defendants do not use the personal and financial information that consumers provide on Defendants' websites to help consumers obtain a payday loan; and

  c. It is not the case that four out of five applicants on Defendants' websites are approved for a payday loan.

39. Therefore, Defendants' representations as set forth in Paragraph 37 above are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

40. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

41.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, and immediate access to business records;

B.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

DATED: Aug. 27, 2013

James Davis
Elizabeth C. Scott
Theresa McGrew
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone main]
(312) 960-5600 [facsimile]
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION